State ex rel. Faber v. Hinkel, 131 Wis. 103.

STATE EX REL. FABER, Respondent, vs. HINKEL, City Clerk, Appellant.

*February 20—March 19, 1907.*

*Intoxicating liquors:* '*Licenses: Fixing amount: Milwaukee city charter: General laws applicable to Milwaukee:* Mandamus: *Judgment of dismissal as bar to subsequent action.*

1. Since the enactment of ch. 307, Laws of 1883 (amending the Milwaukee city charter), all general laws affecting liquor licenses apply to the city of Milwaukee unless in themselves they show a legislative purpose to the contrary.

2. Ch. 296, Laws of 1885—secs. 1548, 1548*b*, Stats. (1898)—as to the amount of the license fee and as to the manner of increasing that amount, is applicable to the city of Milwaukee.

3. Ch. 296, Laws of 1885, prescribed a fixed sum ($200) as the license fee, and when at an election as therein prescribed a majority vote is cast in favor of a higher sum, such latter sum is "required by the general law."

4. In case of such a result of an election in the city of Milwaukee, the charter itself, as amended by ch. 307, Laws of 1883, commands the common council to charge the higher sum for licenses.

5. Where in a *mandamus* action to compel a city clerk to give notice of a special election as provided in sec. 1548*b*, Stats. (1898), the petition was dismissed for failure of the relator to amend it after the overruling of a demurrer to the return, there being no decision on the merits, the judgment of dismissal is not a bar to a subsequent similar action by the same relator against the same person as city clerk, based upon another request for a special election.

State ex rel. Faber v. Hinkel, 131 Wis. 103.

APPEAL from a judgment of the circuit court for Milwaukee county: GEORGE CLEMENTSON, Judge. *Affirmed.*

*Mandamus* to compel appellant, as city clerk, to call a special election for the purpose of voting upon the amount of license fee for sale of liquors in Milwaukee, in accordance with sec. 1548*b*, Stats. (1898). The return conceded the filing of the petition in accordance with that section and the refusal of the appellant to so act on the ground that such section had no application within the city of Milwaukee and because the common council had already fixed the license fee at $200. Such return also set out a previous similar suit for *mandamus* by this same relator, duly determined adversely to him by judgment of the superior court of Milwaukee county, remaining unreversed. The proceedings in that *mandamus* action, set forth in the answer, disclosed that to an entirely similar petition and writ the defendant then, as now, as city clerk, had returned his refusal to call the election on the ground of the inapplicability of said general statute to the city of Milwaukee, and the relator demurred to said return as not stating facts sufficient to constitute a defense, after hearing on which the court entered order that the demurrer be overruled and the alternative writ be quashed and a judgment be entered unless the relator served an amended petition and alternative writ and pay costs within the time limited. It is alleged that judgment was entered in accordance with such order.

To the return in this case the relator demurred, and the court sustained that demurrer by order reciting that it appeared that the issue could not be varied by any further pleading and ordering judgment, whereupon judgment was entered for a peremptory writ commanding the defendant as city clerk to call and notify a special election in the manner required by sec. 1548*b*, and adjudging recovery of costs by the relator against the defendant, from which judgment the city clerk appeals.

For the appellant there was a brief by *Carl Runge,* attor-

ney, and *Austin, Fehr & Gehrz,* of counsel, and oral argument by *W. H. Austin.*

For the respondent there was a brief by *C. H. Hamilton,* and oral argument by *Mr. Hamilton* and *Mr. C. J. Faber.*

DODGE, J.  1. This case presents for consideration the construction of ch. 296, Laws of 1885, now in substance embodied in secs. 1548, 1548*b*, Stats. (1898), with reference merely to the inclusion or exclusion of the city of Milwaukee under its application.    That act, by the first section, now sec. 1548, provided for the granting of licenses by village or town boards and common councils of the respective towns, villages, and cities, and provided that the sum to be paid for such franchises, "subject to the right to increase the same as in this chapter provided," be in cities $200, and contained various provisions as to the method of granting and the term of the license, the giving of bond, etc.    By sec. 3, now sec. 1548*b*, it was provided that the electors of the several cities, villages, and towns in the state may hold special elections for the purpose of determining the amount to be paid for license, and, for that purpose, it was made the duty of the city clerk of every city, on request to him in writing by at least twelve qualified voters, to forthwith give notice of a special election for that purpose to be held on the third Tuesday of September.    The section prescribed the manner of holding the election, the form of ballots, and provided that the amount to be voted on might be either $200, $350, or $500, the figure receiving the highest number of votes to be held and considered the sum to be paid for such license within said city for the three years succeeding the first Tuesday in May thereafter.

From the original organization of the state, and indeed before, Milwaukee had existed under a special charter which conferred power upon the board of aldermen with reference to licenses.    At some periods of time the amount of the fee had been specified by statute, and at other times a maximum

and minimum had been specified within which the aldermen might fix it. The charter had persistently contained, and still does contain, the provision that the general powers granted to the common council should exist, "anything in any general law of this state to the contrary notwithstanding;" and, also, "No general law of this state, contravening the provisions of this act, shall be considered as repealing, amending or modifying the same, except such purpose be expressly set forth in such law." Meanwhile various statutes had been enacted with reference to the granting of liquor licenses generally in the state, either fixing the fee or fixing limits within which it might be varied by local authorities, and had uniformly been deemed not to control the subject in Milwaukee, nor, indeed, in other cities in the state having special charters with express provision on the subject. In 1882, by ch. 322, a somewhat general revision of the subject throughout the state was had fixing the limits between $75 and $200. In 1883, by ch. 307, the charter of Milwaukee was amended by striking out the limits of the license fee existing therein and inserting the following: "Provided, the amount to be charged for any such license shall not, in any case, be less than the minimum sum nor more than the maximum sum required by the general laws of this state to be paid for like licenses in its towns and villages of the state, under the general laws, which are hereby made applicable to all licenses granted hereunder." And such provision still continues in force.

The conclusion seems to us unavoidable that the amendment to the charter in 1883 was intended to so limit and modify the clauses therein excluding from application to Milwaukee all general laws not expressly declaring a purpose to amend its charter, to the extent that all general laws affecting liquor licenses shall not be so excluded unless in themselves showing a legislative purpose not to apply to Milwaukee. In the act of 1885 we can discover no evidence of such intent. By its terms it applies generally to the cities of the state, and Milwaukee is in that category. That the legislature intended

the act to affect cities having special charter provisions on the subject of licenses is indicated by the provision in the last section that the act should not serve to lower any existent license fee established by charter or ordinance in any city. In the presence of such obvious legislative intent we cannot but hold that the act of 1885 as to the amount of the license fee and as to the manner of increasing that amount applied to Milwaukee. A few cases, far less clear, where such conclusion has been reached, may be cited. *Brightman v. Kirner,* 22 Wis. 54; *State v. Fisher,* 33 Wis. 154; *Raymond v. Sheboygan,* 76 Wis. 335, 45 N. W. 125; *State ex rel. Risch v. Trustees,* 121 Wis. 44, 52, 98 N. W. 954; *Dahlman v. Milwaukee, post,* p. 427, 110 N. W. 479. Of course, whatever the scope of ch. 296, Laws of 1885, the same must be accorded to the same provisions merely continued in force by embodiment in the revision of 1898 (secs. 1548, 1548b). See sec. 4985, Stats. (1898).

2. From another starting point the same conclusion must be reached for reasons not argued. The amendment to the charter (ch. 307, Laws of 1883) contained:

"Provided the amount to be charged for any such license shall not in any case be less than the minimum sum nor more than the maximum sum required by the general laws."

Obviously, if a general law prescribed a fixed sum, and not, as then, a limit of range, such sum would be both maximum and minimum, and must be charged. It seems clear that ch. 296, Laws of 1885, did just this. It declared that whenever the people of a given city should omit to vote otherwise the sum should be $200, neither more nor less. It also provided that where, in manner prescribed, a majority vote at a special election should be cast in favor of either $350 or $500, such sum should be charged. When such an event occurred, the general law itself required a specified sum. This was clearly a local-option law of the class fully discussed and explained in *Adams v. Beloit,* 105 Wis. 363, 81 N. W. 869, which, potentially existent at all times over the whole state,

was to take practical effect in any specific locality upon the happening of the event of a special election. The people at such election were not empowered to legislate, but create or declare the fact upon which became effective the behest of the legislature that the sum to be charged for a license shall be $350 to $500, according to such fact. Such behest was a general law. *State ex rel. Att'y Gen. v. O'Neill,* 24 Wis. 149; *Smith v. Janesville,* 26 Wis. 291; *In re North Milwaukee,* 93 Wis. 616, 67 N. W. 1033; *Davey v. Janesville,* 111 Wis. 628, 635, 87 N. W. 813; *Nash v. Fries,* 129 Wis. 120, 108 N. W. 210; *State ex rel. Maggard v. Pond,* 93 Mo. 606, 6 S. W. 469. Hence, whenever the people of Milwaukee shall, at a properly held special election, establish the fact of a majority sentiment in favor of one of the higher sums, that sum will be "required by general law," in the very words of the charter, and by that charter itself the common council will be commanded to charge that sum and no other. For both reasons above stated we hold that sec. 1548*b* imposes a clear and imperative duty upon the city clerk to give notice of a special election in manner and form defined, upon presentation of a written request complying with that section, and that such duty should be compelled by *mandamus* if not performed voluntarily. *Neu v. Voege,* 96 Wis. 489, 71 N. W. 880; *State ex rel. Spence v. Dick,* 103 Wis. 407, 409, 79 N. W. 421.

3. Some contention is made that the present action is barred because of the dismissal of a similar action instituted by the same relator and against the same person as city clerk, to compel similar action the year previous, upon another request for a special election. Without passing upon the binding effect of a judgment between parties situated as these are, one as a champion of public interests and the other as a public officer, and affecting another, though similar, official act, it suffices to point out that this and the former proceeding are based on different causes of action. Hence the judgment in

the former is a bar, at most, only as to such matters as affirmatively appear to have been actually decided. The judgment in the former case was merely a dismissal for failure of the relator to amend his petition after the overruling a demurrer to the return. It suggests no decision on the merits, and therefore, in and of itself, is no bar to this action or to consideration of the questions now decided. *Wentworth v. Racine Co.* 99 Wis. 26, 74 N. W. 551; *Grunert v. Spalding,* 104 Wis. 193, 80 N. W. 589; *Montpelier S. B. & T. Co. v. School Dist.* 115 Wis. 622, 635, 92 N. W. 439; *Pereles v. Gross,* 126 Wis. 122, 132, 105 N. W. 217.

*By the Court.*—Judgment affirmed.